1 | PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
2
MARTHA BOERSCH (CABN 126569)
3 | Chief, Criminal Division

4 | ANDREW PAULSON (CABN 267095)
SAILAJA M. PAIDIPATY (NYBN 5160007)
5 | Assistant United States Attorneys

6     1301 Clay Street, Suite 340S
    Oakland, California 94612
7     Telephone: (510) 637-3680
    FAX: (510) 637-3724
8     andrew.paulson@usdoj.gov
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 4:23-00110-YGR |
| Plaintiff, | **UNITED STATES' BRIEF REGARDING JURY INSTRUCTIONS** |
| v. | |
| DARRELL WAYNE SMITH, | |
| a/k/a "Dirty Dick Smith" | |
| Defendant. | |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................................1

III. LEGAL STANDARD ..............................................................................................................3

IV. ARGUMENT ............................................................................................................................4

    A. Overview ......................................................................................................................4

    B. Defense's Proposed Additions Risk Confusing the Jury Regarding the Essential Elements of the Crimes Charged in Counts Two and Four. ...............................5

    C. Surplus Language from an Indictment is Not Essential and its Omission Does Not Constructively Amend the Charge. ........................................................................8

V. CONCLUSION ......................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Howard v. Dagget,*
  526 F.2d 1388 (9th. Cir. 1975) ............................................................................................. 9
*Richardson v. United States,*
  526 U.S. 813 (1999) ......................................................................................................... 6, 7
*United States v. Antonakeas,*
  255 F.3d 714 (9th Cir. 2001) ............................................................................................. 10
*United States v. Bachmeier,*
  8 F.4th 1059 (9th Cir. 2021) ................................................................................................ 3
*United States v. Garcia-Paz,*
  282 F.3d 1212 (9th Cir. 2002) ......................................................................................... 4, 8
*United States v. Hartz,*
  458 F.3d 1011 (9th Cir. 2006) .................................................................................... 4, 9, 11
*United States v. Hugs,*
  384 F.3d 762 (9th Cir. 2004) ............................................................................................... 8
*United States v. Mickey,*
  897 F.3d 1173 (9th Cir. 2018) .................................................................................. 4, 6, 7, 11
*United States v. Powell,*
  955 F.2d 1206 (9th Cir. 1991) ......................................................................................... 3, 8
*United States v. Situ,*
  753 F. App'x 446 (9th Cir. 2019) ........................................................................................ 3
*United States v. Soulard,*
  730 F.2d 1292 (9th Cir. 1984) ......................................................................................... 3, 8
*United States v. Stirone,*
  361 U.S. 212 (1960) .......................................................................................................... 10
*United States v. Tsinhnahijinnie,*
  112 F.3d 988 (9th Cir. 1997) ........................................................................................... 9, 10
*White v. Ford Motor Co.,*
  312 F.3d 998 (9th Cir. 2002) ........................................................................................... 3, 8

**Statutes**

18 U.S.C. § 545 ........................................................................................................................ 8
18 U.S.C. § 2244(a)(4) ..................................................................................................... 1, 2, 9
18 U.S.C. § 2244(b)(4) ............................................................................................................ 7
18 U.S.C. § 2246(3) ............................................................................................................. 5, 7

## I. INTRODUCTION

Following last week's charge conference, defense proposed additions to the jury instructions outlining the substantive charges against the defendant. Defense asks the Court to modify the standard Ninth Circuit jury instruction to include specific allegation language from the Superseding Indictment. For Counts Two and Four, these additions will confuse the jury regarding what they must determine because the additions include language that suggests that the government must prove something different than the essential elements of the crime. The Court should therefore provide the previously agreed upon instructions, which track the statute and the Ninth Circuit Model Criminal Jury Instructions.

## II. FACTUAL BACKGROUND

On July 25, 2024, a federal grand jury returned a 15-count Superseding Indictment in this case. Dkt. 56. Count Two as alleged in the Superseding Indictment states in relevant part:

> On a date between on or about October 1, 2020, and on or about March 31, 2021, in the Northern District of California, the defendant, DARRELL WAYNE SMITH, while in FCI Dublin, a Federal prison, knowingly engaged in sexual contact with S.L.H., a person who was in official detention and under the custodial, supervisory, and disciplinary authority of the defendant, when he touched S.L.H.'s *buttocks* while they were in S.L.H.'s cell at FCI Dublin, in violation of 18 U.S.C. § 2244(a)(4).

*Id.* ¶ 7 (emphasis added).

At trial, with respect to this count, the victim, Shayla,[1] testified that "He [the Defendant] came in -- he came into my cell and he -- I was wearing shorts, and he touched my vagina." Tr. Trans. Vol. 1, 173: 6-7. Upon further questioning, she stated, "He -- he touched my vagina over my, my shorts," *id.*, 174: 22, and "He just came in my cell and touched me. And I pushed him back. I was trying to push him out of my cell and he grabbed my hand and he placed it on his penis" *id.*, 174:24 -175:1.

Count Four of the Superseding Indictment alleges in relevant part:

> On a date between on or about April 1, 2021, and on or about May 31, 2021, in the Northern District of California, the defendant, DARRELL WAYNE SMITH, while in FCI Dublin, a Federal prison, knowingly engaged in sexual contact with S.L.H., a person who was in official

---

[1] To protect the victim's identity, at the time of charging, the government identified the victim by her initials. Consistent with the procedure used at trial, the government, here, refers to the victim by her first name, Shayla.

U.S. BRIEF RE JURY INSTRUCTIONS                  1
Case No. 4:23-00110-YGR

> detention and under the custodial, supervisory, and disciplinary authority of the defendant, when he touched S.L.H.'s *groin* while they were in S.L.H.'s cell at FCI Dublin, in violation of 18 U.S.C. § 2244(a)(4).

Dkt. 56 at ¶ 11 (emphasis added).

With respect to this count, at trial, Shayla testified, "He came in really fast and he put his hand down the back of my pants under my underwear." Tr. Trans. Vol. 1, 180:2-4. When asked where specifically the defendant touched her, Shayla responded, "My butt." *Id.*, 181:17. She further stated that the touching occurred, "In the middle of my back, my butt." *Id.*, 182:11.

In short, for Count Two, the Superseding Indictment alleged that the defendant touched Shayla's "buttocks," while the trial testimony was that the defendant touched her "vagina" and grabbed her hand and "placed it on his penis"; and Count Four of the Superseding Indictment alleged that the defendant touched Shayla's "groin" and Shayla testified that the defendant touched her "butt." Critically, the Superseding Indictment tracked the statutory language and alleged the essential elements of the crime – that the defendant, while at FCI Dublin, knowingly engaged in sexual contact with an individual who was under his custodial, supervisory, and disciplinary authority. As described further below, the specific part of the body touched is a means of committing the crime, not an essential element.

During trial, defense counsel did not cross-examine Shayla on these differences. There can be no dispute, though, that Shayla's testimony at trial refers to the same incidents charged in Counts Two and Four of the Superseding Indictment, except for the location on her body where the sexual contact occurred. For example, when discussing the contact charged in Count Two, Shayla testified that Smith touched her vagina after they had a conversation regarding which correctional officer was in the "bubble" – meaning, who was watching the security camera footage. *See id.*, 173:25 – 174:22. The defendant told Shayla that Officer "Mangra was in the bubble." *Id.,* 174:6-8. After this discussion, Shayla testified that Smith touched her vagina and then he grabbed her hand and forced her to touch his penis as she tried to push him out of her cell. *Id.*, 174:21-175:1. A memorandum of investigation, produced to defense in the normal course of discovery, discussed this very same encounter, which served as a basis for Count Two of the Superseding Indictment: "[Shayla] remembered asking Smith who was in the control room watching the cameras because there was a camera outside of [Shayla's] cell. [Shayla] said Smith told her CO Mangra . . . was in the control room . . . [Shayla] recalled as she

was standing in her cell, alone, Smith touched her buttocks, without asking or saying anything." Memo. of Invest., I-REPORTS-000204.[2]

Similarly, during the incident charged in Count Four, Shayla testified that she was bent over retrieving coffee from under her bunk when the defendant entered her cell and put his hand down her pants, touching her butt, an assault that happened a few minutes before the aggravated sexual abuse charged in Count Five.  *See* Trial. Tr. Vol. I, 179:16-180:8.  In the same memorandum of investigation, law enforcement memorialized, "Around April or May 2021, when [Shayla] was living in the F-Unit, she recalled an early afternoon when she asked Smith about a transfer. [Shayla] was on the floor of her cell, retrieving instant coffee from under her bed when she felt Smith put his hand under her pants and underwear in the crotch area." Memo. of Invest., I-REPORTS-000204.  The key difference is the specific location on Shayla's body where Smith touched her, but, as set forth below, the jury need only find that the defendant knowingly engaged in a sexual contact as charged, not that he engaged in that contact by the specific means alleged in the Superseding Indictment.

### III.   LEGAL STANDARD

Trial courts possess "substantial latitude in tailoring jury instructions so long as they fairly and adequately cover the issues presented." *United States v. Soulard*, 730 F.2d 1292, 1303 (9th Cir. 1984). "Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *White v. Ford Motor Co.*, 312 F.3d 998, 1012 (9th Cir. 2002).  "Neither the prosecution nor a defendant is entitled to the particular language requested in a proposed jury instruction." *United States v. Powell*, 955 F.2d 1206, 1210 (9th Cir. 1991).  While use of the Ninth Circuit's model instructions "does not preclude a finding of error[,]" *United States v. Bachmeier*, 8 F.4th 1059, 1065 (9th Cir. 2021) (quotation omitted), as long as it accurately states the law—*i.e.*, requisite elements of the crime charged—the Ninth Circuit routinely upholds use of model jury instructions. *See*, *e.g.*, *United States v. Situ*, 753 F. App'x 446, 446–47 (9th Cir. 2019).

Instructions must convey the essential elements of the crime to which a jury must unanimously

---

[2] Due to the volume of personally protected information in the MOI, the government will provide a copy of the document to the Court by email and will bring hard copies of for the Court's review during the April 3, 2025.

agree. *See United States v. Mickey*, 897 F.3d 1173, 1182 (9th Cir. 2018). "[T]he Court has created a distinction between the 'elements' of a crime and the 'means' that a defendant uses to commit that crime." *Id.* at 1181. Juries must reach unanimity regarding the essential elements of the charge but need not unanimously agree on the means by which the crime was committed. *Id.* "Minor differences between an indictment and the proof offered at trial could be dismissed as nothing more than a variance." *United States v. Hartz*, 458 F.3d 1011, 1020 (9th Cir. 2006) (quotation omitted) (collecting cases).

## IV.  ARGUMENT

### A.  Overview

Counts Two and Four of the Superseding Indictment alleged the essential elements of abusive sexual contact, namely, (1) that a sexual contact occurred with Shayla; (2) that at the time, Shayla was in official detention at FCI Dublin; and (3) at the time, Shayla was under the custodial, supervisory, or disciplinary authority of the defendant. Though not necessary, the Superseding Indictment also specified the means by which the government believed the defendant had committed these offenses: Count Two alleged that he touched Shayla's buttocks and Count Four alleged that he touched her groin. The specification of the means of the defendant's commission of the sexual contacts charged in Counts Two and Four were merely surplusage that did not alter the essential elements of the crime that the government must plead and prove at trial. *See United States v. Garcia-Paz*, 282 F.3d 1212, 1215–16 (9th Cir. 2002) (specification of "marijuana" in indictment as the "merchandise" the defendant illegally imported into the United States was mere surplusage that the district court properly removed from final jury instructions because it did not alter the charge).

At trial, Shayla testified about the two instances charged in Counts Two and Four but stated that the sexual contacts occurred in a different area of her body than those charged in the Superseding Indictment. Because the locations testified to by Shayla at trial satisfy the statutory definition of "sexual contact," an essential element of the offense, it has no effect on what the jury must unanimously find to convict the defendant on these counts. In other words, whether the defendant committed the sexual contacts charged in Counts Two and Four by touching Shayla's buttocks, groin, or vagina, or by forcing her to touch his genitalia, is immaterial so long as the evidence at trial showed that he committed a

sexual contact, which is defined as "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

For Counts Two and Four, adding the defense's proposed language to the jury instructions highlighting the means of the sexual contact alleged in the Superseding Indictment risks confusing the jury regarding what they must find proven beyond a reasonable doubt in order to convict. Because, as described below, the Ninth Circuit Model Instructions accurately state the elements that the jury is required to find established beyond a reasonable doubt, and defendant's proposed additions would inject confusion and risk misleading the jury, the Court should adhere to the previously agreed-upon instruction that follows the model instruction. Furthermore, defendant may argue that failing to add the part of the body for each count could constitute a constructive amendment, but that is not so—the difference between the allegations in the Superseding Indictment and trial testimony amounts at most to a non-prejudicial variance rather than a constructive amendment of the charges and does not violate the defendant's due process rights.

**B.     Defense's Proposed Additions Risk Confusing the Jury Regarding the Essential Elements of the Crimes Charged in Counts Two and Four.**

The Ninth Circuit Model Jury Instructions outline the essential elements of Abusive Sexual Contact of a Ward and recommend adopting the following language:

First, the defendant knowingly engaged in a sexual contact with [*name of victim*];

Second, at the time, [*name of victim*] was in official detention at [*specify place of federal jurisdiction*]; and

Third, at the time, [*name of victim*] was under the custodial, supervisory, or disciplinary authority of the defendant.

In this case, "sexual contact" means [*specify statutory definition*].

In this case, "official detention" means [*official detention definition*].

Ninth Circuit Model Criminal Jury Instructions, Instruction 20.13 (incorporating Instruction 20.16). As included in the Court's final proposed instructions, "sexual contact" as defined in 18 U.S.C. § 2246(3) means "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin,

breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

Notably, the model instruction directs the parties to provide the jury with the statutory definition for "sexual contact," but does not require the instruction to specifically identify the type or location of the sexual contact within the elements themselves. This is because finding that a sexual contact occurred is essential to proving the crime; but the nature of that sexual contact—*e.g.*, whether the contact was with a victim's buttocks versus groin—goes to the means by which the crime was committed. *Mickey*, 897 F.3d at 1181.

The Ninth Circuit's analysis in *Mickey* is instructive in distinguishing between the essential "elements" of a crime and the "means" of executing that crime. There, the defendant was charged with sex trafficking. The underlying statute criminalizes knowingly causing a victim to engage in a sex act "by means of force, threats of force, fraud, or coercion…or by any combination of such means." A special verdict form in the case required the jury to note whether they had reached unanimity on *each* of the various means set forth, or, if instead it had reached unanimity that "any combination of such means of force, fraud, coercion" was used to cause the victim to engage in a sex act. *Id.* at 1177–80. During deliberations, jurors asked whether they needed to find that the government had proven all of the means listed, and, alternatively, if they agreed that a combination of factors was used, whether they needed to reach a unanimous decision on the specific combination of factors. *Id.* at 1181. The district court informed the jury that they only needed to find one of the listed means (or combination thereof) to satisfy the element and they need not be unanimous on the combination of means. *Id.*

In affirming the district court's decision on the instructions, the Ninth Circuit noted that "'a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element' of a crime." *Id.* (citing *Richardson v. United States* 526 U.S. 813, 817 (1999)). In determining what constituted an essential element versus the means of satisfying that element, the Ninth Circuit referred to the text of the statute. *Id.* at 1181–82. The statute itself specifically referenced "means" of committing the crime. The panel further noted that the statute did "not identify each alternative as an element of the crime," none of the alternatives resulted in a different punishment, and even the statute's title "Sex trafficking ... by force, fraud, or coercion" suggested that

alternatives were different means of committing the crime. *Id.* at 1182. In finding that the special verdict form "introduced considerable, and unnecessary, risk of error," the Ninth Circuit concluded,

> The important lessons from this case are that the prosecution is required to prove every element of the crime beyond a reasonable doubt—without a requirement to subdivide the inquiry to the atomic level—and that jury instructions should not only match the statutory language but should be internally consistent.

*Mickey*, 897 F.3d at 1182.

Applying the analysis from *Mickey* to the statute here, what the jury must determine—the essential elements of the crime—is whether a knowing sexual contact occurred. They need not unanimously decide the specific form of sexual contact—*e.g.*, whether it was contact with the buttocks for Count Two or contact with the vagina as Shayla testified to at trial. Both satisfy the statutory definition of "sexual contact." *See* 18 U.S.C. § 2246(3). Both result in the same punishment. *See* 18 U.S.C. § 2244(b)(4). And the statute's title "Abusive Sexual Contact" confirms that what Congress intended to criminalize is the improper "sexual contact," which could be accomplished by several different means that are described elsewhere in Chapter 109A. *Id.* The Ninth Circuit's Model Jury Instruction thus accurately states the law and the elements required by referring to the statutory definition of "sexual contact" in 18 U.S.C. § 2246(3)—nothing more is required.

Adding the defendant's suggested language regarding the specific allegations in the Superseding Indictment would lead to the same confusion that the trial court faced in *Mickey*. By incorporating the language in the Superseding Indictment specifying the body part touched, it erroneously suggests to the jury that they are limited to convicting the defendant on Counts Two and Four only if he engaged in the sexual contact by the means specifically alleged in the Superseding Indictment. But that is not the case. As discussed above, the jury need not unanimously agree on the means a defendant uses to commit an element of the crime, so long as they unanimously agree that the government proved the element. *See Richardson*, 526 U.S. at 817 ("[A] federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime."). Furthermore, adding defendant's proposed language risks "misleading" the jury into thinking that the precise location of the abusive sexual contact is akin to an element, but that runs contrary to the statutory language. *See White*, 312

F.3d at 1012; *Powell*, 955 F.2d at 1210; *Soulard*, 730 F.2d at 1303. The Court should use its "substantial latitude" to reject the precise language that the defense wants when it goes beyond what the statutory language requires. *See Powell*, 955 F.2d at 1210.

The jury instructions as initially submitted by the parties correctly instruct the jury, track the Ninth Circuit Model Instructions, and avoid this needless confusion. Moreover, as described further in the next section, "[a] defendant is not denied his or her right to a grand jury when the jury instructions and proof at trial diverge insignificantly from the indictment." *United States v. Hugs*, 384 F.3d 762, 767 (9th Cir. 2004).

### C. Surplus Language from an Indictment is Not Essential and its Omission Does Not Constructively Amend the Charge.

To the extent the defendant asserts that the language requested must be added to the jury instructions or risk a finding post-trial of constructive amendment, the Ninth Circuit has repeatedly found that jury instructions need not articulate the various ways in which an element of the crime can be satisfied. For example, in *United States v. Garcia-Paz*, 282 F.3d 1212 (9th Cir. 2002), the government charged the defendant with importation of merchandise in violation of 18 U.S.C. § 545. The indictment specified that the merchandise the government alleged the defendant imported was "marijuana." *Id.* at 1213. Similar to the statutory construction in this case, 18 U.S.C. § 545 outlaws the importation of "merchandise" into the United States—a term that is defined elsewhere in Title 19. The defendant argued that because the indictment alleged that the merchandise he imported was "marijuana," the jury instruction must also require that the jury find he knowingly imported "marijuana." *Id.* at 1215. The Court rejected that argument and upheld the district court's decision to remove any reference to "marijuana" in the jury instructions, finding that the specification of "marijuana" as the illegal merchandise in the indictment was mere surplusage that did not alter the charge against the defendant. *Id.* As the Court stated, "Whether that merchandise is illegal medicine or marijuana does not matter under the statute. Thus, the phrase 'to wit, marijuana' is surplusage, and does not render the jury's conviction of Garcia–Paz on that charge a violation of Garcia–Paz's Fifth Amendment rights." *Id.* at 1217.

The same is true here. 18 U.S.C. § 2244(a)(4) outlaws abusive sexual contacts—a term that is

defined elsewhere in Chapter 109A. That definition includes several *means* by which an individual could violate the statute; specifically, by touching any number of body parts, including the genitalia, groin, or butt, among others. As long as the jury instructions include the essential elements of the offense, which they do, and the definitions contained in the jury instructions accurately capture the means by which the defendant could commit the offense, which they do, then there is no need to introduce confusion by including in the jury instructions surplus language from the indictment. *See also Hartz*, 458 F.3d at 1021 (upholding conviction for brandishing a firearm during a crime of violence where jury did not unanimously agree on which firearm referenced in the indictment was used; indictment's references to specific firearms was "surplusage, rather than an essential element of the crime[.]").

The minor factual variance at issue in this case stands in stark contrast to cases where a court's instructions allow a jury to convict a defendant of behavior that is fundamentally different from the conduct alleged, such as a conviction involving different victims than the ones charged or a conviction for acts occurring two years outside of the charged timeframe and at a completely different location. In *Howard v. Dagget*, 526 F.2d 1388, 1388–89 (9th. Cir. 1975) (per curium), for example, the trial court's instructions allowed a jury to convict a defendant of prostituting victims who were different from the victims alleged in the indictment. At trial, the jury heard evidence related to the two charged victims. *Id.* Like the case before this Court, the jury also heard evidence relating to additional victims. *Id.* The trial court appears to have provided the jury with a copy of the indictment but did not incorporate the identities of the charged victims into the jury instructions because the jury asked, "Do we rule on count 3 on the basis of what is on the actual indictment or what the judge has written…concerning the four essential elements of count 3?" *Id.* at 1390. The trial court erred in informing the jury that any language beyond the wording of the statute, including the identities of the charged victims, was surplusage. *Id.* In doing so, the trial court constructively amended the indictment by "allow[ing] the jury to convict the defendant of a charge not brought by the grand jury." *Id.*

As another example with facts far afield from the slight variance here is <u>United States v. Tsinhnahijinnie</u>, 112 F.3d 988, 990–91 (9th Cir. 1997). In that case, the government charged the defendant with sexually abusing a minor on a particular Indian Reservation in June or July 1992. At

trial, however, the victim testified that the sexual abuse occurred during the 1994-1995 school year, and evidence showed that the charged crime could not have occurred on the Indian Reservation—a jurisdictional prerequisite—during the charged timeframe. *Id.* The Ninth Circuit overturned the conviction, finding that a two-year difference from the charged timeframe and an entirely different location of the offense did not provide the defendant fair notice of what he was accused. *Id.* at 992; *see also United States v. Antonakeas*, 255 F.3d 714, 722 (9th Cir. 2001) (citing *Tsinhnahijinnie* as an illustration of the "the type of extreme facts required for fatal variance to be found").

Another case, the Supreme Court's seminal case on constructive amendment, *United States v. Stirone*, 361 U.S. 212 (1960), also underscores the difference between superfluous language in an indictment and a fundamental change in the crime the jury must determine. In *Stirone*, the government charged the defendant with Hobbs Act extortion by illegally interfering with interstate commerce in relation to shipments of sand from outside the state of Pennsylvania to inside the state. At trial, the government offered evidence of separate interference with steel shipments from a hypothetical mill going from Pennsylvania to other states. *Id.* at 214. The trial court instructed the jury that they could base guilt either upon interference with the sand shipments *or* potential future interference with steel shipments in which the sand would be used. *Id.* In overturning the conviction, the Supreme Court found that the particular type of interference with commerce was an essential element of the crime, and one that gave rise to the federal jurisdiction in the first place. *Id.* at 218. In other words, the government charged the defendant with extortion related to sand shipments into Pennsylvania, which meant the defendant could not be convicted for extortion related to an entirely different material (steel) from a nonexistent steel mill outside of Pennsylvania. *Id.* at 218-19.

No such alteration of the charge occurred here. As discussed above, the proof at trial matched all the essential elements alleged in Counts Two and Four: the victim is the same, the charged timeframes are the same, the location of the assaults is the same, the nature of the assaults is the same (abusive sexual contacts), and the facts surrounding the assaults are the same. The only difference between what was alleged in these counts and what was proven at trial is the body part the defendant touched—*i.e.*, the means by which the defendant accomplished the sexual contacts, which is a difference that literally amounts to inches. *See Hartz*, 458 F.3d at 1022–23 (9th Cir. 2006) ("A minor difference between the

U.S. BRIEF RE JURY INSTRUCTIONS
Case No. 4:23-00110-YGR
10

indictment and the jury instructions that does not affect an essential element of the offense does not risk blindsiding a defendant with an unforeseeable basis of liability or prosecution strategy."). Indeed, the variance between what was charged in the Superseding Indictment and what was proven at trial was so slight that the defense did not cross-examine Shayla on the issue or raise it in their Rule 29 motion. The Ninth Circuit has held that "a minor technical error" in an indictment does "not rise to the level of constructive amendment[,]" particularly where the defendant "had ample notice of the charges against him and the jury was properly instructed on the nature of those charges." *Mickey*, 897 F.3d at 1177. The jury instructions that follow the Ninth Circuit Model Instruction accomplish that goal here, and the Court should reject the defendant's requested additions.

## V. CONCLUSION

In short, the previously agreed upon jury instructions require the jury to find that the defendant knowingly engaged in a "sexual contact," with Shayla, at FCI Dublin, during the time periods identified in the Superseding Indictment. Providing the previously agreed upon jury instructions, without reference to the surplus language from the indictment referring to the means by which the defendant accomplished these sexual contacts, does not result in a constructive amendment of the charges and does not violate the defendant's constitutional rights. The Court should thus wield its substantial latitude in crafting jury instructions that accurately state the law—without misleading the jury—and reject the defendant's precise requested formulation.

DATED: April 2, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney


_____/s_____
ANDREW PAULSON
SAILAJA M. PAIDIPATY
Assistant United States Attorneys